IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

TERRY ANDERSON,                     :

    Plaintiff,                  :

vs.                                 :       CIVIL ACTION 07-0736-WS-C

ROGER GOODMAN et al.,               :

    Defendants.                 :


REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding pro se and in forma pauperis filed a Complaint under 42 U.S.C. § 1983. This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on Defendants' Motion for Summary Judgment (Docs. 25, 26), and Plaintiff's opposition thereto. (Docs. 17, 24, 31).[1] For the reasons stated below, it is recommended that Defendants' Motion for Summary Judgment be granted and that Plaintiff's action against these Defendants be dismissed with prejudice.

I.  SUMMARY OF ALLEGATIONS

1. From its review of the record, the Court summarizes the parties' allegations which are material to the issues addressed in this Report and Recommendation.

2. On May 22, 2007, Plaintiff was arrested and taken to the Dallas County Jail

---

[1] Although styled a "Motion of Interrogatories and Admissions on File" (Doc. 31), this document is a response in opposition to Defendants' Motion for Summary Judgment. Therefore, it is considered as such, and Plaintiff's "motion" is due to be denied.

where he was charged with third degree burglary.  (Doc. 1 at 4, Complaint).

    3. At the time of his arrest, Plaintiff complained of teeth pain, and Defendants gave him two Tylenol.  (Id.).

    4. On June 20, 2007, Defendants conducted a health screening, and Plaintiff informed the jail medical staff that his gums were hurting.  (Doc. 34, att. 3 at 41-43, Supplemental Medical Records).

    5. The jail physician examined Plaintiff, gave him Tylenol, and scheduled an appointment with a local private dentist, Dr. Iverson B. Hopson.  (Id.; Doc. 26, att. 2 at 3, Warden Goodman affidavit; Doc. 26, att. 2 at 21, Hopson Medical Records).  The earliest available, non-emergency appointment with Dr. Hopson was July 30, 2007.   (Doc. 26, att. 2 at 3).

    6. On July 30, 2007, Dr. Hopson examined Plaintiff, took an x-ray, and prescribed Clyndamycin for an infection.  (Doc. 26, att. 2 at 21, Medical Records).

    7. Approximately three weeks later, on August 23, 2007, Defendants took Plaintiff back to see Dr. Hopson, at which time Dr. Hopson extracted three of Plaintiff's teeth.  (Doc. 26, att. 2 at 21).

    8. Plaintiff continued to complain of teeth pain, and, on October 18, 2007, Defendants took him back to see Dr. Hopson, at which time Dr. Hopson again prescribed Clyndamycin and extracted two more teeth.  (Doc. 31 at 2; Doc. 26, att. 2 at 21).

    9. Plaintiff continued to complain of teeth pain, and, on November 7, 2007, was prescribed Motrin 800 twice a day as needed.  (Doc. 34, att. 3 at 44).

10. On January 25, 2008, Defendants took Plaintiff back to see Dr. Hopson, and Dr. Hopson pulled four more teeth. (Doc. 26, att. 2 at 21).

11. On or about February 27, 2008, Plaintiff was transferred to Bullock County Correctional Facility. (Doc. 16, Notice of Change of Address).

## II.  PROCEDURAL ASPECTS OF THE CASE

1. On October 11, 2007, Plaintiff filed the present § 1983 action against Defendants Warden Roger Goodman, Sgt. David Brown, and Correctional Officer Mike Rogers, alleging denial of proper medical treatment for his dental problems. (Doc. 1 at 5-6).

2. Plaintiff claims that his dental treatment was unnecessarily delayed, causing him "pain and suffering," for which he seeks injunctive relief and compensatory damages.[2] (Id. at 4-7; Doc. 17 at 1-2, Plaintiff's Opposition; Doc. 24 at 2, Plaintiff's Opposition).

3. In their Answer and Special Report filed on May 14, 2008, Defendants deny Plaintiff's allegations and assert the defenses of absolute and qualified immunity.[3]

---

[2] As discussed above, Plaintiff was transferred to Bullock County Correctional Facility on February 27, 2008. (Doc. 16). "'[A]n inmate's request for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once an inmate has been transferred.'" See Boglin v. Weaver, 2001 WL 228172, *9 (S.D. Ala. 2001) (unpublished) (quoting Spears v. Thigpen, 846 F.2d 1327, 1328 (11th Cir. 1989)). Therefore, Plaintiff's claims for injunctive relief related to his incarceration at the Dallas County Jail are moot.

[3] Plaintiff does not specify whether he is suing Defendants in their official or individual capacities or both. Thus, the Court will consider both. As state officials, Defendants are absolutely immune from suit for damages in their official capacities. See Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment). In addition, "[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional

3

(Docs. 25, 26).

4. On May 15, 2008, the Court ordered that Defendants' Special Report and Answer be treated as a Motion for Summary Judgment. (Doc. 27). Defendants' motion and Plaintiff's responses in opposition thereto are now before the Court.

### III.  SUMMARY JUDGMENT STANDARD

1. In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles. The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment. "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . .'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c).

2. The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party. Barfield v. Brierton, 883 F.2d 923, 934 (11th Cir. 1989).

3. However, Rule 56(e) states that:

> an adverse party [to a motion for summary judgment] may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by

---

rights of which a reasonable person would have known.'" Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). Having found herein that Plaintiff's allegations related to his lack of medical treatment do not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." Saucier v. Katz, 533 U.S. 194, 201 (2001).

>affidavits or as otherwise provided in this rule, must set forth
>specific facts showing that there is a genuine issue for trial. If
>the adverse party does not so respond, summary judgment, if
>appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e); see also Celotex Corp., 477 U.S. at 325-27.

  4. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (internal citations omitted). "Summary judgment is mandated where a party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc., 508 F.3d 641, 647 (11th Cir. 2007) (citations omitted).

## IV. DISCUSSION

  1. As discussed above, Plaintiff seeks redress in this action pursuant to 42 U.S.C. § 1983 for an alleged constitutional deprivation arising out of his medical treatment from May 22, 2007, to February 27, 2008, while he was incarcerated in the Dallas County Jail. (Doc. 1; Doc. 31 at 1-2; Doc. 16).

  2. Plaintiff claims that Defendants unconstitutionally delayed dental treatment for him from May 22, 2007, when he was arrested, until July 30, 2007, when he was first seen by Dr. Hopson. (Doc. 31 at 1). Plaintiff further complains that the dental treatment that followed on August 23, 2007, October 18, 2007, and January 25, 2008, was unconstitutionally delayed. (Doc. 1; Doc. 24 at 2; Doc. 31 at 1-2).

3. Section 1983 provides in pertinent part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983 (1994).

4. In addressing Plaintiff's claims brought under § 1983, the Court begins its analysis "by identifying the specific constitutional right allegedly infringed. . . ." Graham v. Connor, 490 U.S. 386, 394 (1989).

5. In this case, the record shows that, initially, Plaintiff was held in the Dallas County Jail as a pretrial detainee on a charge of third degree burglary. (Doc. 1 at 4, 6). As a pretrial detainee, Plaintiff was protected by the Fourteenth Amendment. See Williams v. Limestone County, Ala., 198 Fed. Appx. 893, 896 n.3 (11th Cir. 2006) (unpublished) (citing Bell v. Wolfish, 441 U.S. 520 (1979)).  During his incarceration, however, Plaintiff appears to have been convicted of the charge and sentenced (Doc. 26, att. 1 at 3), making the Eighth Amendment applicable to his claim. Id.  In any event, whether analyzed as a Fourteenth or an Eighth Amendment claim, the result is the same.

6. "[T]he minimum standard for providing medical care to a pre-trial detainee under the Fourteenth Amendment is the same as the minimum standard required by the Eighth Amendment for a convicted prisoner; both the right to due process and the right to be free from cruel and unusual punishment are violated by a government official's

6

deliberate indifference to serious medical needs." Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1425 n.6 (11th Cir. 1997).

7. In Sims v. Mashburn, 25 F.3d 980 (11th Cir. 1994), the Eleventh Circuit delineated the objective and subjective portions of an Eighth Amendment claim as follows:

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

Sims, 25 F.3d at 983.

8. To meet the objective element required to demonstrate a denial of medical care in violation of the Eighth Amendment, a plaintiff first must demonstrate the objective existence of a "serious" medical need. Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (1994) (citing Hudson v. McMillian, 503 U.S. 1, 10 (1992)). "[A] 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill, 40 F.3d at 1187 (citations omitted). "[T]he medical need must be 'one that, if left unattended, pos[es] a substantial risk of serious harm.'" Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (quotation marks and citations omitted).

9. Next, in order to meet the required subjective element of an Eighth Amendment denial of medical care claim, a plaintiff must demonstrate "deliberate indifference" to a

serious medical need.  Hill, 40 F.3d at 1186.

> In Estelle, the Supreme Court established that "deliberate indifference" entails more than mere negligence.  Estelle, 429 U.S. at 106, 97 S. Ct. 285; Farmer, 511 U.S. at 835, 114 S. Ct. 1970.  The Supreme Court clarified the "deliberate indifference" standard in Farmer by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official *knows of* and *disregards an excessive risk to inmate health or safety;* the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837, 114 S. Ct. 1970 (emphasis added).  In interpreting Farmer and Estelle, this Court explained in McElligott that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." McElligott, 182 F.3d at 1255; Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

Farrow, 320 F.3d at 1245-46 (emphasis in original).

      10.  "Delay in access to medical attention can violate the Eighth Amendment . . . when it is tantamount to unnecessary and wanton infliction of pain."  Hill, 40 F.3d at 1187 (internal citations and quotation marks omitted).  "Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem."  Id.; accord Lancaster, 116 F.3d at 1425 (applying the Fourteenth Amendment).

      11. "The tolerable length of delay in providing medical attention depends on the

*nature* of the medical need and the *reason* for the delay." Hill, 40 F.3d at 1188 (emphasis in original) (quoting Harris v. Coweta County, 21 F.3d 388, 393-94 (11th Cir. 1994)).

> 12. The "seriousness" of an inmate's medical needs also may be decided by reference to the *effect* of delay in treatment. Gaudreault, 923 F.2d at 208; Monmouth County, 834 F.2d at 347. Where the delay results in an inmate's suffering "a life-long handicap or permanent loss, the medical need is considered serious." Id.

Hill, 40 F.3d at 1188 (emphasis in original).

13. "An inmate who complains that delay in medical treatment rose to a constitutional violation must place **verifying medical evidence** in the record to establish the detrimental effect of delay in medical treatment to succeed." Id. (emphasis added) (footnotes omitted).

14. The Court assumes, for purposes of this motion, that Plaintiff's dental problems constitute an objectively serious medical injury. Therefore, the Court turns to the second, subjective element of Plaintiff's claim, that is, whether Defendants were deliberately indifferent to Plaintiff's serious medical need.

15. The record shows that Plaintiff had a twenty-year history of dental problems dating back to his incarceration in the Dallas County Jail in 1987 and continuing through his incarceration in the Dallas County Jail in 1991, 1996, and 2007. (Doc. 34, att. 2 at 42, Medical Records; Doc. 34, att. 3 at 3, 6-9, 41).

16. In his Complaint, Plaintiff asserts that, when he was arrested and brought to the Dallas County Jail on May 22, 2007, he told Defendants that he was experiencing

dental pain, and Defendants gave him Tylenol pain medication but did nothing else. (Doc. 1 at 4).

17. The record shows that, approximately three weeks later, on June 13, 2007, Plaintiff completed a "Prisoner Request Form" and asked the Warden if he could be released to "go and get [his] mouth fix[ed]" so that he would not have to suffer any longer. (Doc. 17 at 11).

18. One week later, on June 20, 2007, the jail physician conducted a health screening on Plaintiff and again prescribed Tylenol for pain. (Doc. 34, att. 3 at 41-43). In addition, he ordered that Plaintiff be taken to see a dentist, and an appointment was scheduled for July 30, 2007, with Dr. Iverson Hopson. (Id.; Doc. 26, att. 2 at 3).

19. On July 20, 2007, ten days before his appointment with Dr. Hopson, Plaintiff completed another Prisoner Request Form asking to speak to the Warden about his "medical condition." (Doc. 17 at 4). Three days later, on July 23, 2007, Plaintiff again completed a Prisoner Request Form, stating, "my head is full of infection," and pleading for immediate medical attention. (Id. at 5).

20. In response to Plaintiff's requests, Warden Goodman informed Plaintiff that an appointment had been made for him to see a dentist on July 30, 2007. (Doc. 26, att. 2 at 3). According to Warden Goodman, Dr. Iverson Hopson was the only local dentist who had agreed to treat prisoners from the Dallas County Jail, and his earliest available appointment was July 30, 2007. (Id. at 3).

21. While awaiting Plaintiff's appointment, Defendants gave Plaintiff Tylenol for pain. (Id.). Warden Goodman did not consider Plaintiff's condition to constitute an emergency. (Id.).

22. On July 30, 2007, Defendants took Plaintiff to see Dr. Hopson, and Dr. Hopson took an x-ray and prescribed an antibiotic for infection. (Id. at 21).

23. Approximately three weeks later, on August 23, 2007, Defendants took Plaintiff back to see Dr. Hopson, at which time Dr. Hopson extracted three of Plaintiff's teeth. (Id.).

24. Approximately one month later, on September 28, 2007, Plaintiff submitted another Prisoner Request Form, stating that he was in pain and asking to see the dentist immediately. (Doc. 17 at 7).

25. Defendants took Plaintiff back to see Dr. Hopson approximately three weeks later, on October 18, 2007, and Dr. Hopson again prescribed an antibiotic and extracted two more teeth. (Doc. 26, att. 2 at 21).

26. Plaintiff continued to complain of pain in November, 2007, and was prescribed Motrin 800 twice a day as needed. (Doc. 34, att. 3 at 44; Doc. 17 at 9; Doc. 5 at 2).

27. On January 25, 2008, Defendants took Plaintiff back to see Dr. Hopson, and Dr. Hopson pulled four more teeth. (Doc. 26, att. 2 at 21).

28. Plaintiff's dental problems appear to have ceased after the January 25, 2008, appointment, and he was transferred to Bullock County Correctional Facility on February

27, 2008.  (Doc. 16).

29. In this action, Plaintiff claims that, because he first complained of pain with his teeth on May 22, 2007, and, yet, did not see a dentist for two months, Defendants were "deliberately indifferent" to his serious medical need.  Plaintiff further claims that the delay between each of his four appointments with Dr. Hopson constitutes "deliberate indifference" by Defendants.  The Court disagrees.

30. In order to constitute "deliberate indifference," Defendants must have known of and disregarded an excessive risk to Plaintiff's health.  Farrow, 320 F.3d at 1245.

31. While the Court agrees that it would have been preferable for Plaintiff to have been treated by a dentist sooner than two months after he began complaining of tooth pain, the mere fact that there was a two-month delay in securing dental treatment does not establish a constitutional violation.

32. As discussed above, "[c]ases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem."  Hill, 40 F.3d at 1187.

33. Plaintiff's injury in this case was not life-threatening.  (Doc. 1 at 4).  He had a history of chronic dental problems, and there is no evidence that his life was in danger from this condition during his incarceration in the Dallas County Jail from May, 2007, to

February, 2008.

34. Further, Plaintiff has submitted no "verifying medical evidence" showing that the delay in dental treatment worsened or exacerbated his medical condition. Hill, 40 F.3d at 1188 (emphasis added).

35. While "[d]elay in access to medical attention can violate the Eighth Amendment . . . when it is tantamount to unnecessary and wanton infliction of pain," Hill, 40 F.3d at 1187, the record in this case shows that the delay in securing dental treatment for Plaintiff was the result of difficulty scheduling an appointment with Dr. Hopson,[4] and that, during that time, Plaintiff was given pain medication. (Doc. 1 at 4; Doc. 34, att. 3 at 41-44).

> 36. It is a reality of prison life that appointments with physicians or for diagnostic testing for treatment of non-life-threatening medical conditions must be scheduled. It is particularly complicated when an inmate is to be seen by an offsite physician. In such instances, appointments must be made; transportation must be arranged; security must be provided to

---

[4] The present case is distinguishable from that of Farrow, 320 F.3d 1235 (11th Cir. 2003), in which Defendant, a private dentist who provided dental services to prison inmates, inexplicably delayed providing dentures to Plaintiff for fifteen months after determining that Plaintiff, who had only two teeth which cut into his gums, needed the dentures. The evidence showed that Dr. West became angry with Plaintiff shortly after the denture fitting process began when Plaintiff complained that he was taking too long. Dr. West was aware that Plaintiff was unable to eat a regular diet and had lost twenty pounds in three months. In addition, Dr. West was aware that Plaintiff's gums were bleeding, swollen, and painful. Although Defendant was aware of Plaintiff's condition, he did not provide the dentures until after Plaintiff filed suit.

Such circumstances are not presented here where Plaintiff's condition did not appear to be an emergency; where there were no signs of a deteriorating medical condition (such as swelling, bleeding, or significant weight loss); where Plaintiff received pain medication while awaiting his appointment; and where the two-month delay was the result of the private dentist's schedule, not an intent to punish.

>escort the inmate to the appointment and back; and priority must be given to inmates according to the nature of their medical problems. (Doc. 17, art. 11 at 4). It is reasonable to expect some delay while arrangements are being made. Patients in the free world often experience similar delays when seeking treatment of non-life-threatening injuries or ailments.

Martin v. Barnes, 2008 WL 250603, *8 (S.D. Ala. 2008).

>37.  "When a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989). "[D]elay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay." Hill, 40 F.3d at 1189.

Id.

38. Considering all of the circumstances surrounding the treatment that Plaintiff received for his dental problems, including the two-month delay in securing the initial appointment with the dentist and the delay accompanying the three appointments that followed, the Court cannot say that any of the Defendants were deliberately indifferent to Plaintiff's injury. Thus, Plaintiff has failed to establish the subjective element of his denial of medical care claim.

39. If a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial," Rule 56(c) mandates that summary judgment be entered against the nonmovant. Celotex Corp., 477 U.S. at 322.

14

40. "No material issues can be in dispute where the plaintiff's evidence fails to establish a constitutional violation." Bennett v. Parker, 898 F.2d 1530, 1534 (11th Cir. 1990). Therefore, since no constitutional violation has been established, Defendants' Motion for Summary Judgment is due to be granted.

## V. CONCLUSION

Based on the foregoing, the Court concludes that Defendants are entitled to summary judgment in their favor on all claims asserted against them by Plaintiff.

Accordingly, it is recommended that the Motion for Summary Judgment of Defendants Warden Roger Goodman, Sergeant David Brown, and Correctional Officer Mike Rogers be GRANTED and that the entirety of Plaintiff's Complaint against these Defendants be DISMISSED with prejudice.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this 1st day of October, 2008.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

# MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.   **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **Opposing party's response to the objection.**  Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection.  Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.   **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the

16

cost of the transcript.